**EAST OAKLAND–FRUITVALE PLANNING COUNCIL, a non-profit California corporation, Plaintiff,**

v.

**Donald RUMSFELD, Director, Office of Economic Opportunity, Defendant.**

**No. C–70–66.**

United States District Court,
N. D. California.

March 30, 1970.

Legal Aid Society of Alameda County, Oakland, Cal., for plaintiff.

James L. Browning, Jr., U. S. Atty., William B. Spohn, Asst. U. S. Atty., San Francisco, Cal., for defendant.

### ORDER

OLIVER J. CARTER, District Judge.

This action is brought by the East Oakland-Fruitvale Planning Council [hereinafter referred to as Council], a nonprofit corporation organized under the laws of the State of California. The action is against the Director of the Office of Economic Opportunity [herein-

after referred to as Director], for declaratory and injunctive relief, adjudging that the Director is under a statutory duty to consider and determine whether or not Council's program is entitled to continue receiving federal funds despite the fact that a proposed federal grant has been disapproved by the governor of the State of California.

In its amended complaint, plaintiff asserts jurisdiction under 5 U.S.C. § 702, 28 U.S.C. §§ 1331, 1361.

Council was organized in August, 1968, to conduct a pilot advocacy planning project in the East Oakland area under a research and demonstration grant by the Office of Economic Opportunity [hereinafter referred to as OEO]. The research and demonstration grant originally had a termination date of August 31, 1969, but this was later extended to September 30, 1969. The Council operated for a year and then an application for a grant to operate an additional year was filed in August, 1969. On September 4, 1969, OEO approved the application and submitted the proposal to the governor of California for approval or disapproval in accordance with the provisions of Section 242 of Title II of the Economic Opportunity Act [hereinafter referred to as the Act], 42 U.S.C. § 2834, which provides:

"In carrying out the provisions of this subchapter, no contract, agreement, grant, loan, or other assistance shall be made with, or provided to, any State or local public agency or any private institution or organization for the purpose of carrying out any program, project, or other activity within a State unless a plan setting forth such proposed contract, agreement, grant, loan, or other assistance has been submitted to the Governor of the State and such plan has not been disapproved by the Governor within thirty days of such submission, or, if so disapproved, has been reconsidered by the Director and found by him to be fully consistent with the provisions and in furtherance of the purposes of this subchapter. * * * "

On October 29, 1969, the governor of California disapproved the proposed grant. After informal notification of the governor's disapproval of the proposal, Council entered into negotiations with representatives of the governor's office to determine whether the governor's objections could be satisfied by modifications to the proposal. Negotiations were unsuccessfully terminated on December 2, 1969. During negotiations, plaintiff has been operating under provisional funding by OEO.

In its amended complaint, Council alleges the following facts. Council operated successfully during its first year. During that year, its program was continually evaluated by independent evaluators contracted for this purpose by the Director. All evaluations reflected favorably on Council's program and established that the program was fully consistent with the provisions and in furtherance of the purposes of the Act. The governor's disapproval of the second year's proposed grant was based upon philosophical objections to the nature of Council's program. Representatives of the Director have recommended to him that he exercise his power to override the governor's disapproval. The Director has informed Council that its program in all respects conforms to the Director's overall plan. Despite all of this, the Director refuses to afford an opportunity to plaintiff and its representatives for a hearing and refuses to proceed in any manner to determine whether he will override or sustain the governor's disapproval.

Council's claim for relief depends upon the contention that the Director is obligated by the Act to either override or actually affirm the governor's disapproval. The Director has moved for a dismissal of the action on the grounds that he has complete discretion to determine whether he will or will not consider overriding the governor's disapproval. The Court concludes that the defendant's motion to dismiss should be granted.

Council supports its contention that the Director is under a duty to consider overriding the governor's disapproval by reference to Section 242 of the Act, which is quoted above. Both parties agree that the Director has the power to override the governor's disapproval and grant funds to projects such as Council's as long as they are consistent with the provisions of and in furtherance of the purposes of Title II of the Act. However, Council argues further that the Congressional grant of such power carries with it the affirmative duty to determine whether or not the project in question is one which qualifies for his overriding of the governor's disapproval. If it does, Council argues, the Director is then required to override the governor's disapproval and approve the proposed grant.

It is apparent that if the Court accepts Council's contention, the Act must be interpreted either to provide the governor of the state in which the activity is proposed, with a disapproval power which has practically no force or effect except to cause delay, or to provide the governor with a disapproval power limited to disapproving only those proposals which are inconsistent with and not in furtherance of the purposes of Title II of the Act. This interpretation necessarily follows because presumably, the project for which the proposed grant is intended must have been fully consistent with the provisions and in furtherance of the purposes of Title II of the Act, before the proposal gained approval by the Director and submission to the governor. Under these conditions, a disapproval by the governor would be to no avail since the Director would then have no alternative but to override the disapproval if the proposal is consistent with the provisions and in furtherance of the purposes of Title II of the Act, which it had to be before it was ever submitted to the governor. Thus, the governor's power to disapprove would be restricted in that it could be effectively exercised only against those proposals which perchance improperly gained approval by the Director and submission to the governor when they were not consistent with or in furtherance of the purposes of Title II of the Act. Such an interpretation of the Act is inconsistent with the language, purpose, and history of Section 242 of Title II of the Act.

When the Economic Opportunity Act was enacted by Congress in 1964, Title II contained a provision that gave state governors the final and absolute power to disapprove community action program proposals. Pub.L. No. 88–452, § 209(c) 78 Stat. 519 (1964). The bill which was originally introduced to the Senate by the Senate Labor and Public Welfare Committee provided state governors with the limited function of *commenting* on community action program proposals. See 110 Cong.Rec. 16418 (1964). This aspect of the bill generated extensive debate in the Senate, with some Senators urging greater power to state governors and others urging a more limited one. See *e. g.*, 110 Cong.Rec. 16710–16731, 16739–16742, 16761–16787 (1964). The bill finally passed the Senate with an amendment giving the state governors greater control by way of the final and absolute power to "veto" proposals. 110 Cong.Rec. 16790 (1964). The Congress ultimately enacted the Economic Opportunity Act in this form. 110 Cong. Rec. 18634, 19008 (1964).

In 1965, an attempt was made to limit or repeal entirely the final "veto" power in state governors. See Senate Rep.No. 599, 89th Cong. 1st Sess., 2 U.S.Code Cong. & Admin.News, pp. 3501, 3511–3513 (1965). The issue before the Congress at that time is aptly described in the following passage from Senate Rep. No. 599, Id. at p. 3512:

"The chief problem to date appears to revolve around the Governor's unlimited power to veto programs and projects under title I–B and title II–A. These both involve assistance to local programs planned and developed by local agencies. The absolute veto as applied to these programs gives the Governor discretion over local pro-

grams and affairs over which, under State law, he normally has no direct control and for which he is not directly responsible.

"Since the Federal law does not prescribe any criteria to be followed by the Governor, and since there is no State law prescribing criteria, the discretion is in fact unfettered as to the conditions of its exercise. Since there is no Federal body or official with power of review, and since none exists at the State level, the power is absolute. The power may be exercised without any of the restraints that would have been provided had the power been granted by a State legislature composed of representatives each of whom might be concerned over its possible future use in connection with programs in his own community. "What Congress has done in section 209(c) is to confer upon the Governors more power of control over a federally assisted program than the Governors enjoy with respect to State action of their own governments. In some States the Governor has no veto at all, but there is no State where the Governor's veto of the legislative process cannot be overridden."

After extensive debate the matter was presented to a joint conference committee which produced the 1965 Amendments to the Economic Opportunity Act which included a limitation on the state governor's veto power as it is in its present form, namely, a power that is subject to reconsideration by the Director. A passage from Conference Report No. 1061 is particularly relevant and is herein quoted:

"The present act provides that no assistance can be made available for work-training programs or community action programs until the Governor of the State in which they are to be carried on has been given notice of the plan for the assistance and has not disapproved it within 30 days.

"The House bill amended this provision so that, in the event of the dis-

approval of a plan by a Governor, the Director *could* reconsider it, and if he found it fully consistent with the provisions and in furtherance of the purposes of this act, *could* override the Governor's disapproval.

"Pursuant to the instructions of the House, your managers have insisted on the inclusion of the House provision in the conference report. The conferees expect that the procedures established by the Director of the Office of Economic Opportunity under section 209(a) will include provision for informal hearings held by the Director at the request of the Governor of a State or other interested parties."

Conference Rep.No. 1061, Statement of the Managers on the part of the House, 89th Cong., 1st Sess., 2 U.S. Code Cong. & Admin.News, p. 3557 (1965). [Emphasis added.]

■■ In view of this legislative history, the Court is of the opinion that it must interpret Section 242 of the Act as giving the Director the power to reconsider and override disapproval by a state governor without any obligation to do so if he feels that it is undesirable to proceed with the proposal in view of disapproval by the governor of the state in which the project is to be conducted. Council further argues that such an interpretation renders the statute unconstitutional in that it gives the Director power not to act without any standards to govern his decision not to proceed to reconsider the governor's disapproval. The Court concludes that this contention is wholly lacking in merit.

Accordingly, it is hereby ORDERED that the defendant's motion to dismiss be, and the same is hereby granted on the ground that plaintiff's complaint fails to state a claim for relief. The Court need not and does not decide those issues of standing, reviewability, and jurisdiction which are also raised by the defendant. The action is hereby dismissed.